## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## DETROIT DIVISION

| | |
|---|---|
| JORGE DE LA TORRE, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT |
| IQ DATA INTERNATIONAL, INC., TRANSUNION, LLC, EQUIFAX INFORMATION SERVICES, LLC and EXPERIAN INFORMATION SOLUTIONS, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

## **COMPLAINT**

**NOW COMES** Jorge De La Torre ("Plaintiff"), by and through his undersigned attorney, complaining of the Defendants' IQ Data International, Inc. ("IQ Data"), TransUnion, LLC ("TransUnion"), Equifax Information Services, LLC ("Equifax") and Experian Information Solutions, Inc. ("Experian"), (collectively, "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendants' violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 *et seq.*, and IQ Data's violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692 *et seq.*

1

**JURISDICTION AND VENUE**

2. Subject matter jurisdiction is conferred upon this Court by the FCRA, FDCPA, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) as a substantial part of the events or omissions giving rise to Plaintiff's claims against Defendants occurred in the Eastern District of Michigan and a substantial part of property that is subject of this action is situated in the Eastern District of Michigan.

4. Joinder of Plaintiff's claims against Defendants is proper under Fed. R. Civ. P. 20(a)(2) as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and common questions of law or fact will arise.

**PARTIES**

5. Plaintiff is a consumer and a natural person over 18-years-of-age.

6. Defendant IQ Data is a Washington company that is in the business of collecting debts owed or asserted to be owed or due to others. IQ Data actively collects consumer debts in Michigan. IQ Data is a furnisher of information to the major credit reporting agencies, including Trans Union, Equifax and Experian. IQ Data's principle place of business is located at 21222 30th Drive SE, Suite 120, Bothell, Washington 98021.

2

7. Defendant TransUnion is a Delaware limited liability corporation with its principal place of business located in Chicago, Illinois. TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the State of Michigan.

8. Defendant Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the State of California. Equifax's registered agent is located at 1550 Peachtree Street NW, Atlanta, Georgia.

9. Experian is a consumer reporting agency that maintains credit information on millions of U.S. consumers and businesses. Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the State of Michigan.

3

**FACTS SUPPORTING CAUSE OF ACTION**

10. On January 3, 2022, Plaintiff provided notice to his landlord, Independence Green Apartments, that he will not be renewing his lease and will be moving out his unit at the end of his lease term.

11. Plaintiff was told by landlord that he needed to provide a 60-day notice before being eligible to terminate his lease and move out of his unit. The notice Plaintiff provided to Independence Green Apartments on January 3, 2022, gave him until March 4, 2022 to move out of his unit.

12. Therefore, Plaintiff was responsible for paying the full month of February 2022 and a pro-rate in March 2022 of $192.

13. On February 1, 2022, Plaintiff gave a cashier's check to Independence Green Apartments for $1,451.12  ("alleged debt") to cover February's rent.

14. On February 23, 2022, Plaintiff gave a cashier's check to Independence Green Apartments for $192 for the month of March 2022, as agreed upon prior to this date.

15. On February 25, 2022, Plaintiff did a walkthrough of his unit with a property manager and submitted the keys of the unit to Independence Green Apartments, which finalized all of Plaintiff's requirements and obligations under the lease agreement.

16. Despite Plaintiff completing his obligations under the lease, Independence Green Apartments assigned the allegedly defaulted debt to IQ Data for collections.

17. On May 25, 2022 Plaintiff received a credit alert from the Credit Reporting Agencies that his credit score had significantly dropped due to a new collection account from IQ Data for the amount of $1,457 ("subject debt"). Prior to this alert, Plaintiff had not received any information from Independence Green Apartments or IQ Data regarding the subject debt.

18. Subsequently thereafter, Plaintiff, who prides himself on keeping an excellent credit rating, contacted IQ Data to understand what the newly reported collection account was for. IQ Data told Plaintiff it was for an unpaid month of rent in March 2022. Plaintiff explained that he is not responsible for the subject debt and that Plaintiff and Independence Green Apartments resolved all obligations and made complete payment in February 2022.

19. IQ Data insisted that Plaintiff pay the alleged subject debt immediately and dispute his claims later. Plaintiff refused to pay the subject debt because he knew the subject debt was not owed. Furthermore, Plaintiff requested that IQ Data cease contacting him until they validate the alleged subject debt.

20. On August 18, 2022, Plaintiff sent detailed dispute letters to TransUnion, Equifax and Experian disputing the erroneous alleged subject debt being furnished by Defendants.

21. Specifically, Plaintiff disputed the alleged subject debt as: "I do not owe IQ Data or Independence Green Apartments for any alleged rent amount or utilities."

22. Upon information and belief, IQ data received notice from each of Plaintiff's detailed dispute letters within five days of Plaintiff initiating the dispute with TransUnion, Equifax and Experian. *See* 15 U.S. Code §1681i(a)(2) .

23. Each Defendant responded to Plaintiff's dispute by verifying the alleged subject debt as reporting accurately.

24. Defendants collectively failed to reasonably investigate Plaintiff's detailed credit disputes. Specifically, TransUnion, Equifax and Experian continued to report the alleged subject debt in collections on Plaintiff's credit files, after Plaintiff communicated to Defendants that he was not responsible for the alleged subject debt.

25. Specifically, each Defendant continued to report the alleged subject debt as in collections, with a Balance of $1,457, and a derogatory status of: "past due as of August 2022."

26. Additionally, On September 30, 2022, Plaintiff was denied a credit opportunity from Fifth Third Bank because his financial history showed he was subject to collections due to the alleged subject debt.

27. Moreover, Defendant IQ Data failed to notate the tradeline as disputed, despite Plaintiff's detailed dispute letter.

28. Defendant's misleading conduct has severely disrupted Plaintiff's ability to obtain financing and general well-being as Plaintiff constantly feared serious credit consequences on a debt he does not owe.

6

29. At no time did Defendants correct the error and the inaccurate and materially misleading reporting of the alleged subject debt as it continues to paint a false and damaging picture of Plaintiff's creditworthiness.

30. Concerned about the violations of his rights, Plaintiff was forced to seek the assistance of counsel to file this action to prevent Defendant from further deception in the future, thus incurring costs and expenses.

## IMPACT OF INACCURATE INFORMATION ON PLAINTIFF'S CREDIT FILE

31. The erroneous reporting of the IQ Data account paints a false and damaging image of Plaintiff. After it was provided notice by Plaintiff, Trans Union, Equifax, and Experian, IQ Data did not update its trade line to accurately reflect that Plaintiff had paid the subject debt off in full.

32. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff helpless as to his ability to regain a firm foothold on his creditworthiness, credit standing, and credit capacity.

33. The inaccurate reporting of the alleged subject debt had significant adverse effects on Plaintiff's credit rating because it created a false impression that Plaintiff was still personally liable and obligated to pay on the subject debt, rendering Plaintiff a high risk consumer and damaging his creditworthiness which led to Plaintiff being denied credit opportunities.

34. Additionally, on October 3, 2022, in an effort to remedy the continued inaccurate and incomplete reporting of the subject loans and to validate the accuracy of Defendants' credit reporting, Plaintiff purchased a Credit Report and Score for $19.95.

35. The Credit Report Plaintiff purchased revealed that Defendants' were still inaccurately and incompletely reporting the subject debt. Plaintiff suffered monetary damages he otherwise would not have incurred had Defendants ceased or corrected the inaccurate and incomplete reporting of the subject debt after Plaintiff's detailed disputes.

36. As a result of actions, and inaction of the Defendants, Plaintiff has suffered various types of damages as set forth herein, including specifically, out-of-pocket expenses, the loss of credit opportunity, time, and money expended meeting with his attorneys, tracking the status of his disputes, monitoring his credit file, and mental and emotional pain and suffering

37. Due to the conduct of IQ Data, TransUnion, Equifax and Experian, Plaintiff was forced to retain counsel to correct the inaccuracies in his credit file.

### COUNT I – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
#### (Against TransUnion)

38. Plaintiff restates and realleges all paragraphs 1 through 37 as though fully set forth herein.

39.TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

40.TransUnion is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

41.At all times relevant, the above-mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

42.At all times relevant, Plaintiff was a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

43.The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

44.The FCRA requires the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

45.If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to conduct a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the disputed information within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

46. Plaintiff provided Trans Union with all relevant information and documentation in his dispute to support his contention that the disputed account was reporting inaccurately.

47. A cursory review of the evidence submitted by Plaintiff would have confirmed that the disputed account was reporting inaccurately.

48. TransUnion failed to conduct a meaningful investigation into Plaintiff's dispute. Instead, it continued to blindly report the false information provided to it by IQ Data.

49. TransUnion violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished concerning Plaintiff.

50. TransUnion repeatedly distributed patently false and materially misleading consumer reports concerning Plaintiff to third parties.

51. TransUnion failed to follow reasonable procedures to assure maximum possible accuracy by repeatedly ignoring the evidence provided by Plaintiff and blindly accepting erroneous information furnished to it by IQ Data as accurate.

52. Had TransUnion followed reasonable procedures to assure maximum possible accuracy, it would have reviewed the dispute and evidence submitted by Plaintiff and promptly discovered that the disputed account was reporting inaccurately. Instead, TransUnion repeatedly accepted erroneous information as true and

continued the reporting of the erroneous information pertaining to the disputed account.

53. TransUnion should have implemented procedures and safeguards to prevent the repeated reporting inaccurate information regarding the account.

54. TransUnion violated 15 U.S.C. §1681i(a)(1) by failing to (1) conduct a reasonable investigation into Plaintiff's dispute and (2) modify the account to report accurately on Plaintiff's credit file.

55. Had TransUnion conducted a reasonable investigation into Plaintiff's valid dispute, it would have promptly determined that the disputed account was reporting incorrectly.

56. TransUnion took no meaningful action to determine whether the disputed account was reporting incorrectly and blindly reported the same with no regard to its accuracy.

57. At very minimum, TransUnion should have requested that IQ Data provide proof that its reporting was accurate. Instead, TransUnion continued to recklessly report false and unreliable information regarding the account.

58. TransUnion violated 15 U.S.C. §1681i(a)(2) by failing to provide adequate notification of Plaintiff's dispute to IQ Data. Upon information and belief, TransUnion may have failed to forward all relevant information provided by Plaintiff to IQ Data.

59. TransUnion violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the disputed account.

60. TransUnion violated 15 U.S.C. §1681i(a)(5) by failing to modify the disputed account that was the subject of Plaintiff's dispute after Plaintiff submitted compelling evidence that the disputed account was reporting inaccurately.

61. TransUnion had actual knowledge that the erroneous reporting of the disputed account would have a significant adverse effect on Plaintiff's credit worthiness and ability to obtain credit.

62. Despite having actual knowledge that Plaintiff's credit file contained erroneous information, TransUnion readily distributed Plaintiff's inaccurate and misleading credit reports to one or more third parties, thereby misrepresenting facts about Plaintiff and Plaintiff's creditworthiness.

63. By deviating from the standards established by the credit reporting industry and the FCRA, TransUnion acted with a reckless disregard of its duty to report accurate and complete consumer credit information.

64. It is Trans Union's regular business practice to blindly report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

12

65. TransUnion's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its mistreatment of Plaintiff.

66. TransUnion has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own convenience above its grave responsibility to report accurate consumer data.

67. As stated above, Plaintiff was significantly harmed by TransUnion's conduct.

**WHEREFORE**, Plaintiff, JORGE DE LA TORRE, respectfully requests for the following relief:

a. A finding that TransUnion's conduct as set forth herein violated the FCRA;

b. An Order enjoining TransUnion from reporting the fraudulent account;

c. An award of compensatory damages to Plaintiff to be determined by the jury;

d. An award of statutory damages of $1,000.00 for each violation of the FCRA;

e. An award of punitive damages to be determined by the jury; and

f. An award of reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Equifax)

68. Plaintiff restates and realleges all paragraphs 1 through 67 as though fully set forth herein.

69. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

70. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

71. At all times relevant, the above-mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

72. At all times relevant, Plaintiff was a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

73. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

74. The FCRA requires the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

75. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to conduct a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the disputed information within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

76. Plaintiff provided Equifax with all relevant information and documentation in his dispute to support his contention that the disputed account was reporting inaccurately.

77. A cursory review of the evidence submitted by Plaintiff would have confirmed that the disputed account was reporting inaccurately.

78. Equifax failed to conduct a meaningful investigation into Plaintiff's dispute. Instead, it continued to blindly report the false information provided to it by IQ Data.

79. Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished concerning Plaintiff.

80. Equifax repeatedly distributed patently false and materially misleading consumer reports concerning Plaintiff to third parties.

81. Equifax failed to follow reasonable procedures to assure maximum possible accuracy by repeatedly ignoring the evidence provided by Plaintiff and blindly accepting erroneous information furnished to it by IQ Data as accurate.

82. Had Equifax followed reasonable procedures to assure maximum possible accuracy, it would have reviewed the dispute and evidence submitted by Plaintiff and promptly discovered that the disputed account was reporting inaccurately. Instead, Equifax repeatedly accepted erroneous information as true and continued the reporting of the erroneous information pertaining to the disputed account.

83. Equifax should have implemented procedures and safeguards to prevent the repeated reporting inaccurate information regarding the account.

84. Equifax violated 15 U.S.C. §1681i(a)(1) by failing to (1) conduct a reasonable investigation into Plaintiff's dispute and (2) modify the account to report accurately on Plaintiff's credit file.

85. Had Equifax conducted a reasonable investigation into Plaintiff's valid dispute, it would have promptly determined that the disputed account was reporting incorrectly.

86. Equifax took no meaningful action to determine whether the disputed account was reporting incorrectly and blindly reported the same with no regard to its accuracy.

87. At very minimum, Equifax should have requested that IQ Data provide proof that their reporting was accurate. Instead, Equifax continued to recklessly report false and unreliable information regarding the account.

88. Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide adequate notification of Plaintiff's dispute to IQ Data. Upon information and belief, Equifax may have failed to forward all relevant information provided by Plaintiff to IQ Data.

89. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the disputed account.

90. Equifax violated 15 U.S.C. §1681i(a)(5) by failing to modify the disputed account that was the subject of Plaintiff's dispute after Plaintiff submitted compelling evidence that the disputed account was reporting inaccurately.

91. Equifax had actual knowledge that the erroneous reporting of the disputed account would have a significant adverse effect on Plaintiff's credit worthiness and ability to obtain credit.

92. Despite having actual knowledge that Plaintiff's credit file contained erroneous information, Equifax readily distributed Plaintiff's inaccurate and misleading credit reports to one or more third parties, thereby misrepresenting facts about Plaintiff and Plaintiff's creditworthiness.

93. By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with a reckless disregard of its duty to report accurate and complete consumer credit information.

94. It is Equifax's regular business practice to blindly report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

95. Equifax's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its mistreatment of Plaintiff.

96. Equifax has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information

contained in such files, ultimately valuing its own convenience above its grave responsibility to report accurate consumer data.

**WHEREFORE**, Plaintiff, JORGE DE LA TORRE, respectfully requests for the following relief:

a. A finding that Equifax's conduct as set forth herein violated the FCRA;

b. An Order enjoining Equifax from reporting the fraudulent account;

c. An award of compensatory damages to Plaintiff to be determined by the jury;

d. An award of statutory damages of $1,000.00 for each violation of the FCRA;

e. An award of punitive damages to be determined by the jury; and

f. An award of reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT III – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Experian)

97. Plaintiff restate and realleges paragraphs 1 through 96 as though fully set forth herein.

98. Experian is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

99. Experian is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

100.    At all times relevant, the above-mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

18

101.     At all times relevant, Plaintiff is a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

102.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

103.     The FCRA requires that the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

104.     If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

105.     Plaintiff provided Experian with all relevant information in his request for investigation to reflect that he had no obligation on the alleged subject debt and that the alleged subject account should be deleted.

106.     Experian prepared Plaintiff's credit reports containing inaccurate and materially misleading information by reporting the alleged subject debt, when Plaintiff never owed the alleged subject debt.

107.     Experian violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. Upon information and belief, Experian prepared patently false and materially misleading consumer reports concerning Plaintiff.

108.     Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete the information in Plaintiff's credit files.

109.     Experian violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's dispute to IQ Data. Upon information and belief, Experian also failed to include all relevant information as part of the notice to IQ Data regarding Plaintiff's disputes that Experian received from Plaintiff.

110.     Experian violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the alleged subject debt.

111.     Experian violated 15 U.S.C. §1681i(a)(5) by failing to delete inaccurate information that was the subject of Plaintiff's disputes.

112.     Experian violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from IQ Data that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff.

113.     Experian knew that the inaccurate reporting of the alleged subject debt would have a significant adverse impact on Plaintiff's credit worthiness and his ability to receive financing and/or credit opportunities.

114.     The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

115.     Despite actual knowledge that Plaintiff's credit files contained erroneous information, Experian readily sold and disseminated Plaintiff's inaccurate and misleading reports to one or more third parties, thereby misrepresenting material facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

116.     By deviating from the standards established by the credit reporting industry and the FCRA, Experian acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

117.     It is Experian's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

118.     Experian's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit files and reporting his credit information inaccurately.

119.     Experian acted reprehensively and carelessly by reporting and re-reporting the alleged subject debt after Plaintiff put Experian on notice that the subject debt was to be deleted.

120.     Experian has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

121.     As stated above, Plaintiff was severely harmed by Experian's conduct.

**WHEREFORE,** Plaintiff, JORGE DE LA TORRE, respectfully requests for the following relief:

a.  A finding that Experian's conduct as set forth herein violated the FCRA;

b.  An Order enjoining Experian from reporting the fraudulent account;

c.  An award of compensatory damages to Plaintiff to be determined by the jury;

d.  An award of statutory damages of $1,000.00 for each violation of the FCRA;

e.  An award of punitive damages to be determined by the jury; and

f.  An award of reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g.  Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT IV - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against IQ Data)

122.    Plaintiff restates and reallages paragraphs 1 through 121 as though fully set forth herein.

123.    Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

124.    IQ Data is a "person" as defined by 15 U.S.C. §1681a(b).

125.    IQ Data is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

126.    At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

127.    IQ Data violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from TransUnion, Equifax, Experian and Plaintiff.

128.    IQ Data violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information, provided by Trans Union, Equifax, Experian and Plaintiff pursuant to 15 U.S.C. §1681i(a)(2).

129.    Had IQ Data reviewed the information provided by TransUnion, Equifax, Experian and Plaintiff, it would have corrected the inaccurate designation of the subject debt, transmitting the correct information to TransUnion, Equifax and Experian. Instead, IQ Data wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

130.     IQ Data violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of the investigation or reinvestigation of Plaintiff's disputes with TransUnion, Equifax and Experian.

131.     IQ Data violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to TransUnion, Equifax and Experian after being put on notice and discovering inaccurate and misleading reporting with respect to the subject debt.

132.     IQ Data violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information in Plaintiff's credit files.

133.     IQ Data failed to conduct a reasonable investigation of its reporting of the subject debt, record that the information was disputed, or delete the inaccurate information from Plaintiff's credit files within 30 days of receiving notice of the disputes from TransUnion, Equifax, and Experian under 15 U.S.C. §1681i(a)(1).

134.     Despite the blatantly obvious errors in Plaintiff's credit files, and Plaintiff's efforts to correct the errors, IQ Data did not correct the errors or trade line to report accurately. Instead, IQ Data wrongfully furnished and re-reported the inaccurate and misleading information after Plaintiff's disputes to one or more third parties.

135.    A reasonable investigation by IQ Data would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continues to be reported in Plaintiff's credit files.

136.    Had IQ Data taken steps to investigate Plaintiff's valid disputes or TransUnion, Equifax and Experian's requests for investigation, it would have permanently corrected the erroneous and misleading credit reporting.

137.    By deviating from the standards established by the debt collection industry and the FCRA, IQ Data acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to TransUnion, Equifax and Experian.

**WHEREFORE,** Plaintiff JORGE DE LA TORRE respectfully requests for the following relief:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  An order directing that IQ Data immediately delete all of the inaccurate information from Plaintiff's credit reports and credit files;

c.  Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d.  Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f.  Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g.  Award any other relief as this Honorable Court deems just and appropriate.

## COUNT V – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (AGAINST IQ DATA)

138.    Plaintiff restates and realleges paragraphs 1 through 137 as though fully set forth herein.

139.    The Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

140.    The subject debt qualifies as a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

141.    IQ Data qualifies as a "debt collector" as defined by §1692a(6) because it regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

142.    IQ Data qualifies as a "debt collector" because it acquired rights to the subject debt after it was in default or in the alternative, treated the subject debt as if it was in default. 15 U.S.C. §1692a(6).

143.     IQ Data's communications to Plaintiff were made in connection with a collection of the subject debt.

144.     IQ Data violated 15 U.S.C. §§1692e(2), e(8), e(10), and f, through its debt collection efforts on the subject debt.

### a. Violations of FDCPA § 1692e

145.     IQ Data violated §1692e(2) when it misrepresented the character, amount, or legal status of the subject debt. The subject debt was not owed at the time IQ Data demanded payment of the subject debt because it was paid in full. Specifically, Plaintiff did not have any legal or personal obligation to pay IQ Data as Plaintiff paid his obligation to Independence Green Apartments prior to his departure from his unit.

146.     IQ Data violated §1692e(8) by threatening and communicating patently false credit information to Trans Union, Equifax and Experian that it knew, or should have known, to be false by inaccurately reporting the subject debt as in collections and a high balance. This information was inaccurate and misleading because the subject debt was never owed and therefore Plaintiff had no obligations to IQ Data.

147.     IQ Data had actual knowledge that the alleged subject debt was false because it received notices of Plaintiff's disputes from Plaintiff, Trans Union, Equifax and Experian.

148.     Moreover, IQ Data violated §1692e(8) by failing to notate the alleged subject debt as disputed.

149.     IQ Data violated §1692e(10) when it used false representations and/or deceptive means to collect and/or attempt to collect the subject debt. The subject debt was not owed at any time IQ Data demanded payment from Plaintiff.

### b.  Violations of  FDCPA § 1692f

150.     IQ Data violated §1692f when it used unfair and unconscionable means to collect the subject debt. The subject debt was not owed at any time IQ Data demanded payment and continued to report Plaintiff in collections with a high balance. Plaintiff did not have any legal obligation to pay IQ Data. Instead, IQ Data tried to dragoon Plaintiff into making a payment by attempting to mislead him into believing that he is delinquent on the subject debt and is still obligated to make payment on the subject debt.

151.     IQ Data attempted to coerce and induce the Plaintiff into paying a debt that was not legally owed.

152.     As an experienced debt collector, IQ Data knew or should have known the ramifications of collecting on a debt that was paid in full.

153.     Upon information and belief, IQ Data has no system in place to identify and cease collection of debts that were paid in full.

154.      As stated above, Plaintiff was severely harmed by IQ DATA's conduct.

**WHEREFORE**, Plaintiff JORGE DE LA TORRE prays for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

c. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C.      §1692k;

d. Enjoin Defendant from further contacting Plaintiff; and

e. Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: October 25, 2022                    Respectfully Submitted,

<u>/s/ Marwan R. Daher</u>

Marwan R. Daher, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
mdaher@sulaimanlaw.com